1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE TERRITORY OF GUAM

9

10   UNITED STATES OF AMERICA,

11                    Plaintiff,                CIVIL CASE NO. 91-00020

             vs.

12   TERRITORY OF GUAM,                         **DECISION AND ORDER**

13                    Defendant.

14

15          This matter came before the court for a status hearing on May 28, 2014.[1] The hearing

16   focused primarily on DOC's Medical Department, which was raised by the Independent Monitor

17   in his status report filed on May 6, 2014. Therein, the Independent Monitor states that DOC lacks

18   a clinical psychologist, medical records clerk, registered nurses, and psych techs. *See* ECF No.

19   268.  In addition, the Independent Monitor is concerned with the recent tuberculosis ("TB")

20   outbreak and the risk of suicide due to the inadequate mental health care provided to inmates and

21   detainees. *Id.*

22          The United States joins the Independent Monitor's concerns and moves the court for the

23   following orders: (1) the Territory of Guam to formally adopt and begin implementing within 30

24
     _____
     [1] Continued hearings were held on May 30 and June 2-3, 2014.

days DOC's core health care policies, procedures and protocols that were developed and revised by the parties (in the alternative, to adopt and implement certain policies and standards that comport with the National Commission on Correctional Healthcare's Standards for Jails and Prisons); (2) the Territory of Guam to specify in writing within seven days its plans for providing healthcare to inmates and detainees while medical staffing positions remain vacant; (3) the Territory of Guam to report to the United States and the Independent Monitor all serious medical events within 24 hours of their occurrence; and (4) the Territory of Guam to produce a detailed plan within 90 days for maintaining professional heath care and security staffing levels that reflect the growing population of DOC. *See* ECF No. 269.

During the course of the four-day hearing, the following witnesses[2] testified: Dr. Raja Saad, Medical Director of DOC; Mr. Rey M. Vega, Director of Guam Behavioral Health & Wellness Center ("GBHWC"); Dr. Patricia Taimanglo, Clinical Psychologist at GBHWC; Dr. Victor Perez, Psychiatrist at GBHWC; Ms. Cecilia Arciaga, Public Health Program Director at Guam Department of Public Health and Social Services ("GDPHSS"); and Mr. Joe A. San Agustin, Director of DOC.

Having considered all the argument, testimony and evidence presented by the parties, the court finds the following:

### Tuberculosis Issue

At the hearing, there were allegations of a "tuberculosis crisis." In March 2014, a detainee was confirmed to have an active case of TB, but he was treated and is no longer considered infectious. That detainee has since been released from DOC. Dr. Saad testified that there is *presently* no one at DOC with a confirmed case of active TB. Ms. Arciaga of GDPHSS

---

[2] At the hearing, the United States requested that DOC's former Administrator/Clinical Psychologist, Dr. Andrea Leitheiser, take the witness stand. Given that Dr. Leitheiser's employment contract with DOC ended in February 2014, which makes her testimony of the current conditions at DOC irrelevant, the court sustained the Territory of Guam's objection to the United States' request.

confirmed this information. With the assistance of GDPHSS, DOC is in the process of conducting TB testing for all inmates and detainees. According to Ms. Arciaga, there is no shortage of supplies for TB testing.

As the government agency on public health, GDPHSS takes the lead in investigating suspected active TB cases on Guam. Thus, when GDPHSS was informed of the detainee's medical condition in March 2014, GDPHSS immediately met with DOC officials to discuss a plan on how to handle the situation. Ms. Arciaga testified that GDPHSS has been working closely with DOC from the very beginning and continues to do so.

The court finds that TB crisis exists *if* resources are not available to diagnose and treat the disease. Given that DOC has the ability to diagnose TB, and it has the ability to treat the disease through medication and if necessary, referral to GDPHSS or the Guam Memorial Hospital, the court finds that there presently is no tuberculosis crisis at DOC.

## **Mental Health Issue**

Since February 2014, DOC has been without a clinical psychologist. As a result, *all* inmates and detainees requiring mental health care are referred to GBHWC. Mr. Vega testified that GBHWC has a good working relationship with DOC and it is able to accommodate inmates and detainees. While there are challenges in providing services to inmates and detainees, medical professionals from GBHWC testified that they do not turn away patients needing treatment and they are working with DOC to address these challenges.[3] For example, the idea of blocked clinic hours was discussed (*i.e.*, inmates and detainees to be seen on certain days at certain times). In addition, although there are no lockdown units at GBHWC, the facility has the ability to admit inmates and detainees overnight. Dr. Perez testified that he had recently admitted an inmate/detainee for an overnight stay.

---

[3] GBHWC is not equipped to handle prisoners since it does not have a lockdown unit, and there is also the issue of having correctional officers and inmates/detainees in the same waiting area as other patients.

In an effort to address the lack of adequate mental health care at DOC, Mr. San Agustin testified that DOC is in the process of hiring additional staff. Three applicants for the positions of psych techs (two permanent and one limited term appointment) were approved for hiring and are being processed for employment. As for the clinical psychologist vacancy, DOC is searching for a candidate who can fill in the position. There are two individuals interested in the position but neither one of them is board certified (both are anticipated to take their certification exams this summer). Mr. San Agustin also testified that he has been in communication with a psychiatrist who may be interested in a position at DOC. Whether to hire a clinical psychologist or a psychiatrist—or both—is an issue that DOC will be exploring.

Based on the foregoing, the court finds that while increased referrals to GBHWC may not be ideal and certainly not a permanent solution, GBHWC is currently able to provide services to inmates and detainees needing mental health care. In addition, the court finds that DOC is making progress in hiring mental health care professionals, which will eventually reduce the number of referrals to GBHWC. At this point, the court finds that there is no mental health care crisis at DOC.

## Medical and Dental Issues

At this time, the court is unable to make a determination as to whether there is a medical or dental crisis at DOC. For example, the court was provided with a sick call chart, showing an alarming number of inmates/detainees not seen by medical personnel. However, these sick calls were not based on the number of inmates requiring medical attention but rather were based on the number of calls made per month, which could have easily been one inmate making more than one sick call for the same medical issue.

The court is cognizant of the myriad of problems at DOC. While there is so much that needs to be done, the court notes that DOC is working towards a solution. Dr. Saad testified that

he needs a total of five nurses. Efforts are being made to meet this goal. Mr. San Agustin testified that DOC currently has two nurses and a third nurse is scheduled to start work during the first week of June 2014. DOC is in the process of interviewing a fourth nurse and will look into hiring a fifth nurse. Mr. San Agustin also informed the court that a medical records clerk was hired in May 2014. In addition to the hiring of additional medical staff, 48 correctional officers are also in the process of being hired. The court will closely monitor the status of the hiring of these positions to ensure that the DOC infirmary is fully supported.

Based on the foregoing, the court hereby orders as follows:

1. The Director of DOC shall file with the court a status report on the following:

    a. Number of sick calls broken down into three categories: medical, mental, and dental.[4] Under each category, the number of inmates/detainees that were seen by a nurse or physician, and the number of those not seen;

    b. Number of suicide attempts;

    c. Number of referrals made to GBHWC; and

    d. Update on the hiring progress of medical staff and correctional officers.

Information contained in the status report shall be based on the previous two weeks before the actual filing date. The first status report shall be filed on June 17, 2014, and every two weeks thereafter until the September 3, 2014 status hearing.

2. The Medical Director of DOC and the Public Health Program Director of GDPHSS shall collaboratively work together to provide the court with an updated data of tuberculosis testing results. The updated data shall be filed with the court no later than August 20, 2014.

---

[4] The sick calls shall be based on the number of inmates and detainees rather than the number of requests.

3. The parties shall file a joint status report by July 18, 2014, on the progress of the parties' efforts in drafting a scheduling order that specifically discusses a projected timeline in developing/revising and implementing a plan that provides for adequate inmate/detainee access to routine and emergency medical, dental, and mental health care.

4. Said scheduling order shall be filed no later than August 20, 2014. If the parties are unable to agree on a timeline, the U.S. Attorney's Office and the Territory of Guam shall separately file a proposed scheduling order no later than August 20, 2014.

5. The parties shall continue to meet every two weeks to address compliance with Sections III and VII of the Settlement Agreement. The parties must provide notice of the meetings to the Independent Monitor, so he may participate. For the months of June through August 2014, if the parties agree, they may elect to meet less frequently than the court-ordered biweekly meetings.

The court strongly urges the parties to work collaboratively as they had done in the past, in order to move forward and to better focus on resolving the many challenges faced by DOC. The next status hearing is scheduled for September 3, 2014 at 8:30 a.m. The court grants any requests to appear telephonically.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
        **Chief Judge**
**Dated: Jun 06, 2014**